IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| OXYGENATOR WATER TECHNOLOGIES, INC.<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TENNANT COMPANY<br><br>　　　　　Defendant. | Civil Action No. 0:20-cv-00358-ECT-HB |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS

This is a patent infringement lawsuit filed by an over-reaching non-practicing entity against Defendant Tennant Company ("Tennant"), a publicly traded company headquartered in Golden Valley that manufacturers commercial floor scrubbers. The Plaintiff, Oxygenated Water Technologies, Inc. ("OWT"), filed an overbroad complaint attempting to allege claims that are not supported in the law. Through this motion, Tennant moves to dismiss those claims under Fed. R. Civ. P. 12(b)(6), including the allegations of pre-notification indirect infringement in Counts 1-4, the allegation of willful infringement and corresponding request for pre-notification enhanced damages in Count 5, and the request for permanent injunctive relief. Trimming flawed legal claims from the Complaint will assure that that parties and the Court focus discovery and pretrial proceedings on claims that are properly before the Court.

## **INTRODUCTION**

The three patents asserted in this lawsuit relate to the creation of tiny bubbles of oxygen in waste water: U.S. Patent Nos. RE45,415 ("the '415 Patent), RE47,092 ("the '092 Patent), and RE47,665 (the '665 Patent) (collectively, "Patents In Suit"). These patents are reissued patents, which is to say they generally include new or additional claims replacing claims originally appearing in a previously issued patent. The '415 Patent is a 2015 reissue of U.S. Patent No. 7,670,495, which issued in 2010. Similarly, the '092 Patent is a 2018 reissue and the '665 Patent is a 2019 reissue of the same underlying patent.

OWT claims it was formed to commercialize the original patent and was assigned ownership on August 8, 2008. ECF 9, Amended Complaint, ¶ 10. There is no mention in the Amended Complaint of any successful commercialization effort. For example, the Amended Complaint is silent as to any OWT approved licensee, manufacturer, importer, or supplier, and silent as to any OWT product covered by the Patents In Suit. The Amended Complaint notes OWT is unaware of any "entity with an ownership or licensed interest" in the '092 or '665 Patents selling or offering for sale products covered by the patent claims. *Id*. at ¶¶ 105, 126. In short, the Amended Complaint contains no allegations that OWT has commercialized any product covered by the asserted patents.

Tennant, on the other hand, manufactures a range of products, including the accused floor scrubbers pictured below.



*Id.* at ¶ 11. The Amended Complaint alleges Tennant introduced ec-H2O™ electrolysis modules to its scrubbers in 2008, the same year OWT was formed. *Id.* at ¶ 13. Tennant's ec-H2O™ module uses electrolysis to generate millions of tiny bubbles in the water that flows through the scrubber, allowing the scrubber to clean without the use of daily cleaning chemicals. *Id.* Tennant purchases the electrolysis units from a third party.

The Amended Complaint alleges these millions of bubbles are created in Tennant's ec-H2O™ modules through the use of OWT's patented technology. *Id.* at ¶ 16. Tennant is accused of direct infringement. The Amended Complaint also alleges that Tennant instructs its customers to use the scrubbers in an infringing manner. Specifically, the Complaint alleges Tennant "encourages customers to use the product in a way that results in infringement," and "has instructed and encouraged its customers and the operators of its products to use the system in a manner that results in infringement." *Id.* ¶¶ 53, 55. For

3

example, the Amended Complaint references an Operator Manual that instructs the user to "Press the ec-H2O system switch to the on (I) position." *Id*. at ¶ 55 and Exhibit F at 11.

The present suit is not the first interaction between the parties. As the Amended Complaint notes, OWT approached Tennant in 2010 with an offer to license OWT's technology. *Id*. at ¶ 26. Notably, this offer included OWT's original patent, not the Patents In Suit, as it occurred five years before any of the Patents In Suit issued. The parties' negotiations ended in 2010 with no agreement.

Nine years later, on September 20, 2019, OWT's lawyers sent Tennant's Senior Vice President and General Counsel a letter expressing OWT's belief that Tennant's products – some of which Tennant has been manufacturing and selling since at least 2010 – infringed the reissued '415 and '092 Patents and would infringe allowed claims of another patent (eventually reissued as the '665 Patent in October 2019). *Id*. at ¶¶ 53, 78, 102, 123, Ex. F at 1 (dated "04-2010"). When Tennant did not respond, OWT filed the original Complaint on January 27, 2020.

OWT's original Complaint was flawed. Tennant's counsel raised several issues with OWT's counsel in an April 27, 2020 letter. Declaration of Lora M. Friedemann ("Friedemann Dec."), Exhibit A. The parties exchanged emails and agreed to meet and confer. During the meet and confer, Tennant's counsel discussed the original Complaint's deficiencies. For example, Tennant requested the Complaint be amended to exclude any allegation of direct infringement of the method claims in the '415 patent and '092 patent. Method claims require that a complaint allege the accused infringer performed all steps of the claimed method. The original Complaint alleged Tennant directly infringed these

claims because Tennant had "manufactured, used, sold, offered for sale, and/or imported electrodes, electrolysis modules, and floor scrubbers." *See e.g.* ECF 1, Complaint, ¶ 33.

Of course, Tennant is not the user of the products it sells. Tennant's customers use its products. An allegation that the defendant's customers perform the steps of a patented method asserts a claim for indirect infringement, not direct infringement. *See generally Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963 (N.D. Cal. 2018). Accordingly, claims of direct infringement based on activity by parties other than the named defendant would have been properly dismissed. *See, e.g.*, *DoDots Licensing Solutions LLC v. Lenovo Holding Co., Inc.*, 2019 WL 3069773 at *1, No. 18-cv-098 (D. Del. July 12, 2019) (direct infringement claims dismissed to the extent they are "based on any activity other than Defendants' use of the accused products").

OWT agreed to and subsequently did amend its Complaint to allege that Tennant's direct infringement is based on Tennant's own testing, demonstrations, servicing or reconditioning of products. ECF 9, Amended Complaint at ¶ 49. Tennant understands that OWT's claim for direct infringement of the method claims in the Patents In Suit is limited to Tennant's use of the electrolysis feature in the accused products for testing, demonstrations, servicing or reconditioning. Friedemann Dec., ¶ 3. Tennant further understands that OWT has abandoned any claim that Tennant is directly infringing method claims in the Patents In Suit by manufacturing or selling the accused products. *Id*.

The parties also discussed several other defects in the original Complaint, including indirect infringement, willful infringement, the basis for OWT's satisfaction of the patent

marking requirement, and its allegations for injunctive relief. The parties agreed that OWT would amend its Complaint and OWT did so on May 15, 2020. *Id*. at ¶ 4.[1]

The Amended Complaint remains deficient. For example, many of the claims require that Tennant have knowledge of the asserted patents. The Amended Complaint does not assert that Tennant had knowledge of the '415 or '092 Patents until the September 20, 2019 letter. There is no assertion Tennant was made aware of the '665 Patent until the Complaint was filed – indeed the '665 Patent issued after the September 20, 2019 letter.

Instead, the Amended Complaint seeks to fill the nine-year gap between the last licensing discussions in 2010 and the 2019 letter by suggesting that "a reasonable company in Tennant's position would continue to monitor that portfolio to make sure that its products were not infringing not only the OWT patents that existed at that time, but also future patents that issued or reissued from that portfolio." *Id*. at ¶ 31. The Amended Complaint relies on this presumption to suggest "Tennant either knew of, or was willfully blind to the existence of, the [Patents In Suit] and to the fact that use of the . . . electrode products by its customers infringed the [Patents In Suit] as of the date [of issuance of the Patents In Suit] or shortly thereafter." *Id*. at ¶¶ 53, 78, 102; *accord* ¶ 123.

Counsel for Tennant once again raised the issues addressed herein with OWT's counsel on May 15, 2020 and gave OWT an opportunity to file a second amended Complaint. Friedemann Dec., Exhibit C. OWT refused.

---

[1] A redline showing how the Amended Complaint differs from the original Complaint is attached to the Friedemann Declaration as Exhibit B.

## **ARGUMENT**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). "Although a complaint's factual allegations need not be detailed, they must be sufficient to 'raise a right to relief above the speculative level.' . . . The complaint must 'state a claim to relief that is plausible on its face.'" *Washington v. Stewart, Zlimen & Jungers, Ltd.*, 2019 WL 4016170 at *3, No. 19-cv-0717, 19-cv-0761 (D. Minn., Aug. 26, 2019), (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be construed in the light most favorable to the non-moving party, and all material allegations in the complaint are taken as true. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court, however, need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts that the plaintiff alleges. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Here, OWT's Complaint is overbroad. It improperly alleges that Tennant infringes the Patents In Suit both directly and indirectly, that enhanced damages are appropriate, and

that permanent injunctive relief is warranted. The goal of this motion is to trim these deficient claims from the lawsuit, narrowing the scope of discovery and other pretrial activity. These deficiencies cannot be cured by repleading. OWT had the opportunity to replead after a meet and confer with Tennant regarding its first Complaint, and the Amended Complaint still failed to remedy the deficiencies. *MasterMine Software, Inc. v. Microsoft Corp.*, No. 13-cv-971, 2014 WL 12600276 at *1 (D. Minn. Mar. 12, 2014) (noting that amendment is inappropriate when any amendment would be unable to meet the *Twombly/Iqbal* pleading standard).

## I. COUNTS 1- 4 FAIL TO STATE A PLAUSABLE CLAIM FOR INDIRECT INFRINGEMENT PRE-LETTER / LAWSUIT

Counts 1-4 allege that Tennant infringes the Patents In Suit both directly and indirectly. Patents may be infringed directly when the accused party practices the claimed method or makes or sells the accused products. Alternatively, patents may also be infringed indirectly, through inducing or contributing to another's direct infringement. Section 271(b) of the Patent Act provides that "[w]however actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Similarly, Section 271(c) provides that "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of

commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  35 U.S.C. § 271(c).

As noted above, Tennant understands that OWT has limited its claim for direct infringement of the method claims in the Patents In Suit to Tennant's own use of the accused scrubbers for testing, demonstration, servicing and reconditioning.  OWT failed to remedy the deficiencies in its claims for indirect infringement because it has not (and cannot) allege that Tennant had the requisite knowledge supporting OWT's allegations of indirect infringement.

### A.     THE PLEADING STANDARD FOR INDIRECT INFRINGEMENT

"Both induced and contributory infringement require knowledge of the patent at issue."  *Regents of the Univ. of Minn. v. AT&T Mobility LLC*, 135 F. Supp. 3d 1000, 1010 (D. Minn. 2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011) (holding that both contributory and "induced infringement under § 271(b) require knowledge that the induced acts constitute patent infringement"); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("Inducement requires a showing that the alleged infringer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.") (internal quotations and citations omitted).

For indirect infringement, actual knowledge of both the patents and that the accused acts constitute patent infringement is what matters.  To show something less than actual knowledge, such as willful blindness, the burden is heightened.  "[D]eliberate indifference to a known risk that a patent exists is not the appropriate standard under 271(b)."  *Global-

*Tech Appliances, Inc.*, 563 U.S. at 766. To plead willful blindness, OWT bears the burden of alleging "(1) [t]he defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 769. These requirements give willful blindness an appropriately limited scope that surpasses recklessness and negligence.

If the Amended Complaint alleges that knowledge of the patents in suit is obtained from the filing of the Complaint, then the plaintiff may only seek post-suit damages. *Regents of Univ. of Minn.*, 135 F. Supp. 3d at 1010–14; *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1116 (N.D. Cal. 2016); *Smart Wearable Techs., Inc. v. Fitbit, Inc.*, 274 F. Supp. 3d 371, 375 at n.2 (W.D. Va. 2017).

### B. COUNTS 1-4 DO NOT ALLEGE PRE-SUIT / PRE-LETTER KNOWLEDGE OF THE PATENTS IN SUIT NECESSARY TO SEEK DAMAGES PREDATING THE LAWSUIT OR THE SEPTEMBER 20, 2019 LETTER

The Amended Complaint alleges OWT sent Tennant a letter asserting infringement of the '415 and '092 Patents on September 20, 2019. ECF 9, Amended Complaint, ¶¶ 53, 78, 102. There is no allegation Tennant had actual knowledge of the '415 or '092 reissued patents prior to the September 20, 2019 letter. Prior to that letter, the only allegations related to Tennant's "knowledge" are that Tennant and OWT engaged in brief licensing discussions involving other patents in 2010. The Patents In Suit did not exist at that time, and did not issue until at least five years later, with the last of the Patents In Suit issuing after the September 20, 2019 letter.

In an effort to overcome this obstacle, the Amended Complaint alleges that "a reasonable company in Tennant's position would continue to monitor that portfolio to make sure that its products were not infringing not only the OWT patents that existed at that time, but also future patents that issued or reissued from that portfolio." *Id.* at ¶ 31. This allegation is woefully inadequate to allege willful blindness.

For example, there is no allegation that Tennant subjectively believed that there was a high probability that additional patents existed beyond those discussed in 2010 or took any deliberate steps to avoid learning of unknown additional patents. Even if Tennant was aware of OWT's patent portfolio in 2010, awareness of the patent family is not enough. *See Meetrix IP, LLC v. Cisco Sys, Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315 at *2, (Nov. 30, 2018, W.D. Tex.) (knowledge of parent application insufficient); *Vasudevan Software, Inc. TIBCO Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) (awareness of asserted patent's application and a related parent patent with same specification insufficient to infer pre-suit knowledge of asserted patent).

Notably, here none of the Patents In Suit were yet filed during the 2010 negotiations and Tennant is not accused of infringing any of the original patents discussed in 2010. There is no other allegation supporting the contention that Tennant knew of the '415 or '092 Patents prior to OWT's September 20, 2019 letter. Accordingly, allegations of infringement of the '415 and '092 Patents prior to September 20, 2019 must be dismissed for failure to state a claim upon which relief may be granted.

The Amended Complaint also fails to allege that Tennant knew of the issuance of the '665 Patent in October 2019. The '665 Patent was a pending application at the time of

11

the September 20, 2019 letter. Knowledge of an application is not enough. *See Windy City Innovations, LLC*, 193 F.Supp.3d at 1115–16 ("limit[ing] induced infringement claims . . . to post-suit actions because of plaintiff's failure to adequately allege pre-suit knowledge" where the plaintiff alleged knowledge of a related patent and a patent application); *Netfuel, Inc., v. Cisco Systems Inc.*, No. 5:18-cv-02352, 2018 WL 4510737, *3 (N.D. Cal. Sep. 18, 2018) (dismissing the pre-suit induced infringement claim where the patentee had pled pre-suit knowledge of the patent application but failed to plead facts showing pre-suit knowledge of the patent); *Meetrix IP, LLC*, 2018 WL 8261315 at *2–*3 (dismissing pre-suit indirect infringement claim because the patentee's allegation that the accused infringer knew of the asserted patents where the parent patent of the asserted patents had been cited in several patent applications was too attenuated to show pre-suit knowledge of the patent); *Fluidigm Corporation v. IONpath, Inc.*, No. 19-05639, 2020 WL 408988, *3 (N.D. Cal. Jan. 24, 2020) (dismissing claims for induced infringement, contributory infringement, and enhanced damages for willfulness with leave to amend, as to the indirect infringement claims, the court finding that allegations that the accused infringer cited a "relative" patent to the two asserted patents, failed to show pre-suit knowledge of the asserted patents).

  Absent any allegation Tennant knew the '665 Patent had issued, no damages can be had prior to the filing of the present suit. *See Smart Wearable Techs., Inc.,* 274 F. Supp. 3d at 375 n.2 ("The court notes that the consequence of relying on the filing of an infringement suit to satisfy the knowledge requirement is that the plaintiff may only recover damages for indirect infringement for the period of time that commences once the putative infringer learns of the patent.") (internal quotations and citations omitted).

Even though the Amended Complaint does not allege facts that give rise to a plausible claim that Tennant had pre-letter knowledge of the '415 or '092 Patents or pre-suit knowledge of the '665 Patent, the Amended Complaint does not limit its damages requests to post-letter or post-suit damages as is required under the case law. *See, e.g., Regents of the Univ. of Minn.*, 135 F. Supp. 3d at 1010–12. Accordingly, the Court should dismiss Counts 1-4 to the extent that they seek damages for infringement of the '415 and '092 Patents prior to September 20, 2019, and for infringement of the '665 Patent prior to January 27, 2020 when the lawsuit was filed.

## II.   THE COMPLAINT FAILS TO PLEAD FACTS SUPPORTING A PLAUSABLE CLAIM FOR WILLFUL INFRINGEMENT

Enhanced damages in patent infringement cases are "only appropriate in egregious cases of misconduct, such as willful, wanton, or malicious behavior." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017). Such damages "are not meted out in a typical infringement case but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1932 (2016). Accordingly, to state a claim for enhanced damages, a plaintiff must allege *at least* pre-suit knowledge of the patents in suit and knowledge that the use of the accused product infringes the asserted patent. *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*, 311 F. Supp. 3d 1078, 1084 (D. Minn. 2018). Indeed, "knowledge of the patent alleged to be willfully infringed" is an absolute "prerequisite to enhanced damages." *Id.* at 1083 (quoting *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016)).

OWT's claim for enhanced damages should be dismissed to the extent it seeks pre-September 20, 2019 enhanced damages for infringement of the '415 and '092 Patents, and to the extent it seeks pre-suit enhanced damages for the infringement of the '665 Patent, because OWT fails to "raise a right to relief above the speculative level." *Stewart, Zlimen & Jungers, Ltd.*, 2019 WL 4016170 at *3 (internal quotations and citations omitted).

Prior to September 20, 2019, OWT has alleged no facts that would support an inference of knowledge *of the asserted patents*. *See* ECF 9, Amended Complaint, ¶ 24 (asserting 2007 knowledge of patent that is not asserted in the present suit); ¶ 27 (asserting 2010 knowledge of patents that are not asserted in the present suit). Moreover, by the time that the first of the asserted patents issued, more than five years had passed since Tennant's last interaction with OWT. *See id.* at ¶ 29 (noting a 2010 interaction with Tennant); Ex. A (date of reissue of March 17, 2015); Ex. B (date of reissue of October 23, 2018); Ex. C (date of reissue of Oct. 29, 2019). By the time Tennant received notice regarding its alleged infringement of OWT's Patents In Suit, more than *nine years* had passed since Tennant's last interaction with OWT. The bald speculation that Tennant was aware of the OWT patent family from 2007 on because a "reasonable" company would "continue to monitor that portfolio to make sure its products were not infringing" does not state a claim for enhanced damages, as it lacks a key assertion—that Tennant had actual knowledge of the Patents In Suit. *See id.* at ¶ 129; *WBIP, LLC*, 829 F.3d at 1341. Count 5 of the Amended Complaint should be dismissed to the extent it seeks pre-September 20, 2019 enhanced damages for alleged infringement of the '415 and '092 Patents and pre-filing enhanced damages for the '665 Patent.

## III. THE AMENDED COMPLAINT FAILS TO PLEAD FACTS SUPPORTING INJUNCTIVE RELIEF

The Amended Complaint improperly seeks a permanent injunction without a plausible factual basis.

To obtain a permanent injunction, OWT must allege "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

OWT has failed to allege it makes, sells, imports, licenses, or otherwise is commercializing the Patents In Suit in any way. Thus, the Amended Complaint is silent on irreparable harm, silent on the sufficiency of monetary relief, silent on why a remedy in equity is warranted, and silent on how the public interest would not be disserved by a permanent injunction. Indeed, it is difficult to conceive of a situation where a non-practicing entity like OWT could make the showing necessary to obtain a permanent injunction.

Furthermore, OWT seeks permanent injunctive relief against Tennant over the use of a small component in a much larger piece of equipment. ECF 9, Amended Complaint, ¶ D. "When the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and

an injunction may not serve the public interest." *eBay Inc.*, 547 U.S. at 396–97 (concurring opinion by Kennedy, Stevens, Souter, and Breyer).

Courts have dismissed untenable requests for relief at the pleadings stage – like OWT's demand for a permanent injunction – because that is "the point of minimum expenditure of time and money by the parties and the court." *M&C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713 at *6 (S.D. Tex. July 31, 2018) (dismissing non-practicing entity's allegations of willful infringement and prayer for relief including requests for lost profits and injunctive relief for failure to plead supporting factual allegations) (internal citations and quotations omitted). Absent plausible factual allegations supporting its request for a permanent injunction, OWT's threat to take Tennant's commercialized products out of public use is untenable and should be dismissed.

## **CONCLUSION**

Tennant respectfully requests its motion to dismiss pre-notification claims of indirect infringement and willful infringement and requests seeking enhanced damages and permanent injunctive relief be granted. This motion is narrowly tailored, will help limit the scope of discovery, and will help expedite the remaining issues in this matter.

                                                Respectfully submitted,

Dated:  May 22, 2020                *s/Lora M. Friedemann*
                                                Lora M. Friedemann (#0259615)
                                                **FREDRIKSON & BYRON, P.A.**
                                                200 South Sixth Street, Suite 4000
                                                Minneapolis, MN  55402-1425
                                                Telephone:  612.492.7000
                                                lfriedemann@fredlaw.com

                                                R. Scott Johnson *(Admitted Pro Hac Vice)*
                                                **FREDRIKSON & BYRON, P.A.**
                                                505 E. Grand Avenue, Suite 200
                                                Des Moines, IA 50309-1977
                                                Telephone: 515.242.8900
                                                rsjohnson@fredlaw.com

                                                ***Attorneys for Defendant Tennant Company***