UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Oxygenator Water Technologies, Inc.,        File No. 20-cv-358 (ECT/HB)

      Plaintiff,

v.                                                                               **OPINION AND ORDER**

Tennant Company

      Defendant.

Aaron W. Pederson, J. Derek Vandenburgh, Nathan Louwagie and Philip P. Caspers, Carlson, Caspers, Vandenburgh & Lindquist, P.A., Minneapolis, MN, for Plaintiff Oxygenator Water Technologies, Inc.

Cara S. Donels and Robert Scott Johnson, Fredrikson & Byron, PA, Des Moines, IA and Lora Mitchell Friedemann, Fredrikson & Byron PA, Minneapolis, MN, for Defendant Tennant Company.

Plaintiff Oxygenator Water Technologies, a Minnesota corporation, owns several patents on flow-through oxygenators and methods of oxygenating flowing water. Defendant Tennant Company, also a Minnesota corporation, manufactures and sells commercial floor scrubbers. Some of Tennant's scrubbers are equipped with ec-H20™ electrolysis modules, which, according to Tennant, facilitate cleaning through the creation of microscopic bubbles in water without the use of floor cleaning chemicals. In this patent infringement case, Oxygenator alleges that Tennant's ec-H2O™ electrolysis modules use Oxygenator's patented technology, and Oxygenator asserts claims of direct, indirect, and willful infringement of three patents. Tennant has filed a partial motion to dismiss,

pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of: (1) Oxygenator's claims of direct infringement based on Tennant's manufacturing and sale of its products; (2) Oxygenator's allegations of pre-notification indirect infringement in counts 1 through 4; (3) Oxygenator's allegation of willful infringement and corresponding request for pre-notification enhanced damages in count 5; and (4) Oxygenator's request for permanent injunctive relief.  Tennant's motion will be denied.

I

This case concerns Tennant's alleged infringement of three patents owned by Oxygenator—U.S. Patent Nos. RE45,415 ("the '415 patent), RE47,092 ("the '092 patent"), and RE47,665 ("the '665 patent") (collectively, "the patents-in-suit").  *See* Am. Compl., Exs. A–C [ECF Nos. 9-1–9-3].  The history and issue dates of the patents-in-suit, rather than the claims contained therein, are most relevant to Tennant's motion.  In 2003, Aqua Innovations, Inc., a research and development company, applied for a patent on its flow-through oxygenators and methods of oxygenating flowing water.  Am. Compl. ¶ 9 [ECF No. 9].  The application was granted and U.S. Patent No. 6,689,262 ("the '262 patent") was issued to Aqua Innovations on February 10, 2004.  *See id.*; http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&p=1&u=%2Fnetahtml%2FPTO%2Fsearch-bool.html&r=1&f=G&l=50&co1=AND&d=PTXT&s1=6,689,262.PN.&OS=PN/6,689,262&RS=PN/6,689,262.  The '262 patent is the parent patent to the three patents-in-suit.  *See* Am. Compl., Exs. A–C.  In 2008, Oxygenator "was formed to commercialize" the technology created by Aqua Innovations, and Aqua Innovations assigned its patent rights to Oxygenator on August 8, 2008.  *Id.* ¶ 10.  A pending application

2

for another patent also was assigned to Oxygenator, and that patent, U.S. Patent No. 7,670,495 ("the '495 patent"), was issued on March 2, 2010. Louwagie Decl., Ex. 1 [ECF No. 22-1]. Each of the patents-in-suit is a reissue of the '495 patent. Am. Compl., Exs. A–C; *see* Mem. in Supp. at 2 [ECF No. 13]. The '415 patent was issued on March 17, 2015, the '092 patent was issued on October 23, 2018, and the '665 patent was issued on October 29, 2019. Am. Compl., Exs. A–C.

Tennant's alleged awareness of Oxygenator's patents dates to January 19, 2007, when Tennant applied for its own patent (which was ultimately granted) for a "method and apparatus for generating, applying, and neutralizing an electrochemically activated liquid." Louwagie Decl., Ex. 2 [ECF No. 22-2]. In its application, Tennant explained that part of its apparatus, a sparging device, "include[d] a commercially available oxygenator . . . . For example, oxygenator can include the OXYGENATOR Bait Keeper available from Aqua Innovation, Inc. of Bloomington, Minn., which is described in more detail in Senkiw U.S. Pat. No. 6,689,262." *Id.* at 19:43–49. Tennant provided no other examples of oxygenators. *See id.* In 2008, Tennant began equipping many of its commercial floor scrubbers with ec-H20™ electrolysis modules for oxygenating water and selling them as a "green" alternative to other scrubbers that required the use of chemicals. Am. Compl. ¶¶ 13, 20, 22. Tennant purchases the electrolysis modules from a third party. Mem. in Supp. at 3.

In 2010, Oxygenator approached Tennant with an offer to license its technology. Am. Compl. ¶ 26. On July 27, 2010, representatives from Oxygenator met with Tennant's General Counsel and Director of Global Technology and Advanced Products. *Id.* After the meeting, Oxygenator emailed Tennant information about its technology and included

3

an attachment referencing "3 issued U.S. patents, 5 utility patent applications, and 10 provisional applications." *Id.* ¶ 27. The attachment included links to the three issued patents (the '262 parent patent, the '495 patent, and one other) and three published patent applications. *Id.* One week later, Oxygenator issued a press release advertising an exclusive opportunity to license its patented technology for use in cleaning and sanitization. *Id.* ¶ 28, Ex. J [ECF No. 9-10]. The press release stated that Oxygenator would be accepting inquiries and offers until September 17, 2010. *Id.*, Ex. J. Oxygenator sent the press release to members of Tennant's management team. *Id.* ¶ 28. The Parties continued to exchange emails, but, on September 2, Tennant informed Oxygenator that it would not bid on its technology. *Id.* ¶ 29; Mem. in Opp'n at 6 [ECF No. 21]. One month later, Oxygenator provided license pricing information to Tennant, and Tennant again declined to license Oxygenator's technology. Am. Compl. ¶ 29.

Oxygenator next communicated with Tennant on September 20, 2019, when Oxygenator's counsel sent Tennant's Senior Vice President and General Counsel a letter informing them that Tennant was infringing on the '415 and '092 patents and on allowed claims in its forthcoming '665 patent, for which Oxygenator had paid the issue fee. *Id.* ¶¶ 53, 78, 105, 123; Louwagie Decl., Ex. 3 [ECF No. 22-3]. After Tennant did not respond, Oxygenator commenced this lawsuit. ECF No. 1; Mem. in Supp. at 4. Oxygenator asserts five claims in its amended complaint: direct and indirect infringement of the '415 patent (cylindrical electrode products) (Count 1); direct and indirect infringement of the '415 patent (plate electrode products) (Count 2); direct and indirect infringement of the '092 patent (Count 3); direct and indirect infringement of the '665

4

patent (Count 4); and willful infringement (Count 5). Am. Compl. ¶¶ 32–129. Oxygenator seeks a judgment of infringement; damages, including enhanced damages for willful infringement; a permanent injunction against Tennant prohibiting infringement of the '415, '092, and '665 patents; and costs and attorneys' fees. *Id.* at 58–59, ¶¶ A–E.

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A

Tennant argues that Oxygenator's allegations of direct infringement based on Tennant's "manufacture" and "sale" of its ec-H20$^{TM}$ products should be dismissed because these allegations are "contrary to black letter law." Reply Mem. at 2 [ECF No. 24].[1]

---

[1] Tennant did not seek dismissal of this aspect of Oxygenator's claims in its motion [ECF No. 12] but first made this request in its reply brief. In its opening brief, Tennant explained that it understood Oxygenator's direct infringement claims to be limited to Tennant's use of the electrolysis feature in its products for testing, demonstrations,

5

Tennant's argument seems straightforward. Tennant points out that, "[t]o infringe a method claim, a person must have practiced all steps of the claimed method." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (quotation omitted); *see Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("A method patent claims a number of steps; under the Court's case law, the patent is not infringed unless all the steps are carried out."). And it stands to reason that, because Tennant purchases the electrolysis modules from a third party, the manufacture (or assembly) and selling of ec-H20™-equipped floor scrubbers would not necessarily require Tennant to practice all steps of the electrolysis methods claimed in the patents-in-suit. To put it another way, Tennant need not use the ec-H20™-equipped floor scrubbers to manufacture or sell them.

Tennant has a point, but that point does not warrant granting this aspect of its motion. That Tennant *need not* practice all steps of the claimed method to manufacture or sell its ec-H20™-equipped floor scrubbers doesn't necessarily mean that Tennant *does not*

---

servicing, or reconditioning. Mem. in Supp. at 5; *see* Friedemann Decl. ¶ 3 [ECF No. 14]. Tennant understood Oxygenator to have abandoned "any claim that Tennant is directly infringing method claims in the Patents in Suit by manufacturing or selling the accused products." Mem. in Supp. at 5. However, in its response, Oxygenator disputed Tennant's understanding, denying it had abandoned any claim and pointing out that it had, in fact, added specific allegations regarding direct infringement in its amended complaint. Mem. in Opp'n at 9 n.4. In its reply brief, Tennant described Oxygenator's position as an "about-face" and argued that any claims against Tennant "for direct infringement of method claims based on the manufacture and sale of floor scrubbers to third parties" should be dismissed under Rule 12(b)(6). Reply Mem. at 2–3. Under Local Rule 7.1(c)(3)(B), "[a] reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response." However, because Tennant referenced this issue (or "non-issue," as it then believed) in its opening brief and Tennant's argument in its reply brief concerns Oxygenator's response, it is appropriate to consider Tennant's argument.

6

practice all steps of the claimed method during its manufacturing and sales activities. Of course, this observation describes only what is possible, but Oxygenator's complaint "nudge[s] [its] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. Oxygenator alleges that "common manufacturing practice suggests that Tennant tests at least some of its products to confirm they work as intended before they are sent to their customers" and that Tennant's sales process "relies heavily on Tennant demonstrating its equipment to potential customers." Am. Compl. ¶¶ 34, 49–50, 74–75, 85, 98–99, 109, 122. With respect to Tennant's sales process, Oxygenator also alleges that "Tennant's website is littered with buttons inviting a website visitor to 'REQUEST A FREE DEMO' of [its] scrubbers[.]" *Id.* ¶ 50. In other words, Oxygenator pleads plausible direct infringement claims based on allegations that Tennant uses the accused product—that is, practices all steps of the claimed method—in testing and demonstrations that occur occasionally as part of Tennant's manufacturing and sales processes. No authority is cited to support the proposition that Oxygenator's direct infringement claims fail because they do not implicate the manufacture or sale of every accused product.

B

Tennant also seeks dismissal of Oxygenator's allegations of pre-notification indirect infringement in counts 1 through 4, and Oxygenator's allegation of willful infringement and corresponding request for pre-notification enhanced damages in Count 5, arguing that Oxygenator has not plausibly alleged that Tennant had the requisite knowledge of the patents-in-suit prior to Oxygenator's September 2019 letter, or, in the case of the '665

7

patent, prior to the filing of this lawsuit, and, therefore, cannot recover pre-notification damages.  Mem. in Supp. at 8–13; Reply Mem. at 3–5.

A patent may be infringed indirectly through inducing or contributing to a third party's direct infringement.  *See* 35 U.S.C. §§ 271(b), (c).  "Both induced and contributory infringement require knowledge of the patent at issue."  *Regents of the Univ. of Minn. v. AT&T Mobility LLC*, 135 F. Supp. 3d 1000, 1010 (D. Minn. 2015); *see Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 755–56 (2011).  To prove a claim for induced infringement, a plaintiff must show (1) an act of direct infringement by a third party, and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the third party's infringement.  *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1349 (Fed. Cir. 2019).  The intent element requires a showing that "the defendant knew of the patent and that 'the induced acts constitute patent infringement.'"  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. _, 135 S. Ct. 1920, 1926 (2015) (quoting *Global-Tech Appliances*, 563 U.S. at 755–56); *see Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (stating plaintiff must show "that the alleged infringer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.").  To prevail on a contributory infringement claim, "in addition to proving an act of direct infringement, [a] plaintiff must show that [the] defendant knew that the combination for which its components were especially made was both patented and infringing and that [the] defendant's components have no substantial non-infringing uses."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).  Similarly, "[k]nowledge of the patent alleged to be willfully

8

infringed [is] a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

What is necessary to plausibly allege pre-notification or pre-suit knowledge of the at-issue patents? As with most types of cases, the Federal Rules of Civil Procedure don't require particulars. They establish no rules unique to patent cases, and Rule 9(b) says that knowledge "may be alleged generally." A leading treatise explains:

> The concept behind this portion of Rule 9(b) is an understanding that any attempt to require specificity in pleading a condition of the human mind would be unworkable and undesirable. It would be unworkable because of the difficulty inherent in ascertaining and describing another person's state of mind with any degree of exactitude prior to discovery. A rigid rule requiring the detailed pleading of a condition of mind would be undesirable because it would run counter to the general "short and plain statement of the claim" mandate in Federal Rule of Civil Procedure 8(a) without the considerations that warrant a specificity requirement for allegations of fraud or mistake.

5A Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure: Civil* § 1301 at 112–13 (2018). As the Supreme Court explained in *Iqbal*, however, a conclusory allegation of knowledge is not enough. *Iqbal*, 556 U.S. at 686–87. A pleader must comply with Rule 8 and allege facts from which knowledge plausibly may be inferred. *Id.* For its part, the Federal Circuit has made clear in the patent context that "direct evidence of knowledge is not required to support a finding of inducement," *Synqor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1380 (Fed. Cir. 2013) (citing *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008)), and that a plaintiff need only allege "enough facts to raise a reasonable expectation that discovery will reveal that the defendant

9

is liable for the conduct alleged," *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) (cleaned up).

Case examples provide helpful guidance. In *Nalco Co. v. Chem-Mod, LLC*, the plaintiff, Nalco, appealed the district court's Rule 12(b)(6) dismissal of its fourth amended complaint. 883 F.3d 1337, 1342 (Fed. Cir. 2018). Relevant here, the district court dismissed claims of induced and contributory infringement, prompting the Federal Circuit to determine whether Nalco plausibly pleaded the defendants' knowledge of the patent in suit. *Id.* at 1355–1357. Citing to a single page of Nalco's complaint, the Federal Circuit held that "Nalco explicitly pled facts to show Defendants' knowledge, prior to filing suit, of the [at-issue patent.]" *Id.* at 1357. On that page of the complaint, Nalco alleged: (1) a defendant's co-founder cited the at-issue patent in a patent application he filed; (2) prior to filing suit, Nalco "provided the Defendants with express notice of its rights under the [at-issue patent]"; and (3) "[u]pon information and belief," the Defendants knew of Nalco's previous enforcement of the at-issue patent against others. Fourth Am. Compl. at 40, ¶ 109(a)–(c), *Nalco Co. v. Chem-Mod, LLC*, No. 1:14-cv-02510, 2015 WL 12517469 (N.D. Ill. Nov. 16, 2015), ECF No. 108.[2]

---

[2] Nalco also alleged that it provided the defendants with a copy of its initial complaint prior to filing suit. However, this allegation runs from the bottom of page 40 to the top of page 41 of Nalco's Fourth Amended Complaint, and by citing only to page 40 of the pleading, the Federal Circuit appears not to have relied on this allegation to conclude that Nalco plausibly alleged the defendants' pre-suit knowledge. *See* Fourth Am. Compl. at 40–41, *Nalco Co.*, 2015 WL 12517469; *Nalco Co.*, 883 F.3d at 1357.

In *Mastermine Software, Inc. v. Microsoft Corp.*, a case from this District, the court determined that several facts supported the plausible inference that the defendant had pre-suit knowledge of the at-issue patents:

> (1) Plaintiff first released the software at issue in 1999; (2) Plaintiff filed an application for the software's parent patent in 2000; (3) sometime prior to 2005, Defendant reached out to Plaintiff to create a version of the software at issue for Defendant's program; (4) a 2005 version of Defendant's program included the technology described in the pending patent application; (5) Defendant cited both the application for and the ultimately issued parent patent itself in its own patent applications; (6) the parent patent was cited to Defendant by a patent examiner in connection with one of Defendant's patent applications; and (7) the patents-in-suit are continuations of the parent patent.

No. 13-cv-971 (PJS/TNL), 2014 WL 12600276, at *2 (D. Minn. Mar. 12, 2014).

Other federal district courts have found a variety of circumstantial allegations and evidence sufficient to show pre-notice or pre-suit knowledge of a patent. *See, e.g.*, *Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp 3d 323, 335 (S.D.N.Y. 2019) (finding evidence that one of the defendant's employees was "at least familiar with" the parent patent to the at-issue patent, among other circumstantial evidence, sufficient to show pre-suit knowledge); *Biomérieux, S.A. v. Hologic, Inc.*, No. 18-cv-21 (LPS), 2018 WL 4603267, at *4–5 (D. Del. Sept. 25, 2018) (finding allegations that the defendants "waged an unsuccessful, years long campaign before the European Patent Office urging authorities to revoke the European counterparts to the two U.S. patents-in-suit," and that "the parties compete within a small industry and [] the invention has achieved some notoriety," sufficient to plausibly allege knowledge of the patents during the relevant time); *Elm 3DS Innovations, LLC v. Samsung Elecs. Co., Ltd.*, No. 14-cv-1430, 2015 WL 5725768, at *2–3 (D. Del. Sept. 29, 2015) (finding the complaint sufficient to

11

plausibly allege pre-suit knowledge based on its allegations that (1) the plaintiff's President made a presentation to the defendants on the technology at issue and sent the defendant a copy of the parent patent to the patent-in-suit; (2) "the presentation included several slides depicting figures from the [parent] patent"; (3) the defendants cited to the parent patent and related patents, though not the patent-in-suit, in prosecuting a number of their own patents; and (4) the patent-in-suit "was well known in the [relevant] industry").

In light of these authorities, Oxygenator plausibly alleges that Tennant knew of the patents-in-suit prior to Oxygenator's September 2019 letter (or, in the case of the '665 patent, prior to the filing of this lawsuit).[3] In "a patent application disclosing a floor scrubber that generated microbubbles and nanobubbles with an electrolysis module" filed in 2007, Tennant referenced a parent patent to the patents-in-suit. Am. Compl. ¶¶ 23–24. In 2010, Oxygenator and Tennant communicated regarding Oxygenator's offer to license its technology to Tennant. *Id.* ¶¶ 26–30. These communications involved "Tennant's General Counsel and Director of Global Technology & Advanced Products" and included documents referencing Oxygenator's patent family and "the patent that re-issued into the patents-in-suit[.]" *Id.* ¶¶ 26–27. Finally, Oxygenator alleges that "a reasonable company in Tennant's position" that possessed the information exchanged during the Parties' 2010

---

[3] This conclusion makes it unnecessary to consider Oxygenator's alternative argument that Tennant was willfully blind to the patents-in-suit. *See* Mem. in Opp'n at 18–20.

communications "would continue to monitor [Oxygenator's] portfolio" to avoid a risk of infringement. *Id.* ¶ 31; *see also* Mem. in Opp'n at 14.[4]

C

Tennant last argues that Oxygenator has not alleged a plausible factual basis for injunctive relief. Mem. in Supp. at 15–16. The Patent Act provides that a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any rights secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. A plaintiff seeking a permanent injunction under the Patent Act must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Tennant argues that Oxygenator "has failed to allege it makes, sells, imports, licenses, or otherwise is commercializing the Patents in Suit in any way" and, therefore, that the amended complaint is "silent" as to each of the *eBay* factors. Mem. in Supp. at 15. Tennant also argues that damages, rather than injunctive relief, are an adequate remedy

---

[4] In *Niazi Licensing Corp. v. St. Jude Med. S.C.*, the court denied a Rule 12(b)(6) motion to dismiss claims for induced, contributory, and willful infringement, finding that "Niazi's complaint clearly alleges that 'St. Jude was aware of the [at-issue patent] prior to the filing of this lawsuit.'" 311 F. Supp. 3d 1078, 1083 (D. Minn. 2018). When asked at oral argument, Tennant did not challenge *Niazi*'s holding, though the single allegation supporting the defendant's pre-suit knowledge in that case—"St. Jude was aware of the '268 patent prior to the filing of this lawsuit[]"—was considerably less descriptive than Oxygenator's allegations here. *See* Compl. ¶ 21, *Niazi Licensing Corp. v. St. Jude Med. S.C.*, No. 0:17-cv-05096 (WMW/BRT) (D. Minn. Nov. 13, 2017), ECF No. 1.

when, as here, claims of infringement concern "the use of a small component in a much larger piece of equipment." *Id.* For its part, Oxygenator says that dismissal of its request for injunctive relief at this stage of the case would be premature and, alternatively, that it has plausibly pled its entitlement to a permanent injunction. Mem. in Opp'n at 20–23. In support of the latter argument, Oxygenator contends that "allowing Tennant to continue infringing, even if Tennant was required to pay an ongoing royalty, would irreparably harm [Oxygenator] by robbing it of the ability to make the exclusive license agreement it desires." *Id.* at 22.

Oxygenator's status as a non-practicing entity does not categorically bar it from seeking injunctive relief. In *eBay*, the United States Supreme Court rejected the district court's holding that "a 'plaintiff's willingness to license its patents' and 'its lack of commercial activity in practicing the patents' would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue." *eBay*, 547 U.S. at 393. The Court noted that "traditional equitable principles do not permit such broad classifications" and observed that patent holders who preferred to license rather than commercialize their patents "may be able to satisfy the traditional four-factor test, and we see no basis for categorically denying them the opportunity to do so." *Id.*; *see Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1137–38, 1138 n.4 (N.D. Cal. 2018) (rejecting defendant's argument on motion to dismiss that plaintiff could not satisfy *eBay* factors based on unsupported assertion that plaintiff was a non-practicing entity); *see also*, *e.g.*, *Commonwealth Sci. & Indus. Research Org. v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 604 (E.D. Tex. 2007) (granting permanent injunction to non-practicing entity, a

14

research institution that relied on revenue from licensing to fund research and development).

As to Oxygenator's argument that dismissal of its request for an injunction would be premature, courts on balance seem reticent to dismiss requests for injunctive relief at the pleading stage and have held that "[a] claim for permanent injunction should not be stricken at the pleading stage when the underlying claim is not dismissed." *Jerez v. Holder*, No. 10-cv-4498 (JRT/LIB), 2011 WL 7637808, at *12 (D. Minn. Sept. 1, 2011) (quoting *SEC v. Life Wealth Mgmt., Inc.*, 2010 WL 4916609 (C.D. Cal. Nov. 24, 2010)), *report and recommendation adopted as modified*, 2012 WL 1072581 (D. Minn. Mar. 30, 2012). This holds true in the context of patent infringement cases. *See*, *e.g.*, *KIPB LLC v. Samsung Elecs. Co.,* No. 2:19-cv-00056-JRG-RSP, 2020 WL 1500062, at *6 (E.D. Tex. Mar. 9, 2020) ("[W]hether the Court 'will reach and grant that relief on the merits can now only be a matter of speculation,' and '[s]peculation forms no part of the disposition of the rule 12(b)(6) motion before the [C]ourt." (quoting *Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1576 (5th Cir. 1988))), *report and recommendation adopted*, 2020 WL 1495725 (E.D. Tex. Mar. 27, 2020); *Simplivity Corp. v. Springpath, Inc.*, No. 4:15-13345-TSH, 2016 WL5388951, at *19 (D. Mass. July 15, 2016). That is not to say that a court lacks discretion to do so when a complaint does not contain factual allegations that "raise[] any indication that . . . a permanent injunction might eventually be appropriate." *M & C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *6 (S.D. Tex. July 31, 2018) (dismissing with prejudice patent holder's request for a permanent injunction after plaintiff conceded that its third complaint alleged

15

no facts to support injunctive relief and court determined amendment would be futile). Here, Oxygenator's amended complaint is not so lacking as the complaint described by the court in *M&C Innovations* to warrant a Rule 12(b)(6) dismissal of its request for injunctive relief.  Oxygenator alleges plausible claims for which injunctive relief may be available. Consistent with the weight of authority, this is enough for its request for a permanent injunction to survive.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Tennant Company's Motion to Dismiss [ECF No. 12] is **DENIED**.

Dated:  August 7, 2020　　　　　　　　　　　　s/ Eric C. Tostrud
　　　　　　　　　　　　　　　　　　　　　　　Eric C. Tostrud
　　　　　　　　　　　　　　　　　　　　　　　United States District Court