# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Oxygenator Water Technologies, Inc., | Case No. 20-cv-0358 (ECT/HB) |
| Plaintiff, | |
| v. | **ORDER GRANTING STAY** |
| Tennant Company, | |
| Defendant. | |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendant Tennant Company's Motion to Stay and for a Protective Order [ECF No. 252]. For the reasons set forth below, the Court will grant in part and deny in part the motion to stay the litigation until the Patent Trial and Appeal Board ("PTAB") issues a final written decision on the Inter Partes Review ("IPR").[1]

## I.    Procedural Background

Plaintiff Oxygenator Water Technologies ("OWT"), a Minnesota-based company, is the owner of U.S. Patent Nos. RE45,415, RE47,092, and RE47,665 (respectively "the '415 patent," "the '092 patent," and "the '665 patent," and collectively "the patents-in-suit"). (Am. Compl. ¶¶ 1, 7 [ECF No. 9].) OWT claims Tennant infringed by using and

---

[1] The Court does not decide at this time whether the case should be stayed pending exhaustion of any or all appeals from a PTAB decision.

selling two different electrode arrangements – one with flat stacked electrode plates (the "brick" design), and the other containing cylindrical electrodes (the "sparger").  OWT asserts the '415 patent against the brick design and the '092 patent and the '665 patent against the sparger.  (Am. Compl. ¶¶ 58-82 (brick); 83-127 (sparger).)

OWT filed its original Complaint on January 27, 2020.  [ECF No. 1.]  It then filed its Amended Complaint on May 8, 2020.  [ECF No. 9.]  Tennant answered the Amended Complaint and asserted various counterclaims against OWT on August 21, 2020.  [ECF No. 44.]  Pursuant to the Court's Pretrial Scheduling Order [ECF No. 43], as amended [ECF Nos. 67, 72, 152, 251], the deadline for completion of fact discovery has passed, and expert discovery is set to begin.  The parties have exchanged claim charts, invalidity contentions, and have produced tens of thousands of documents in discovery.  Tennant's motion to dismiss was denied (*See* Aug. 7, 2020 Ord. [ECF No. 38]) and a claim construction order has been issued.  (*See* Aug. 18, 2021 Op. & Ord. [ECF No. 162].)  The parties filed several discovery-related motions in late August and early September [*see* ECF Nos. 164, 175, 206, 221, 265] that could result in additional fact discovery, depending on the outcome,[2] and the parties agree there is at least one more fact deposition that remains to be taken.  The Court temporarily suspended expert discovery

[2] The Court heard oral argument on those motions on September 17, 2021, and October 6, 2021.  In addition, at the time Tennant filed the instant motion it also had a motion pending to supplement its invalidity contentions, amend its answer to assert an affirmative defense of inequitable conduct, and extend fact discovery by 45 days. [ECF No. 90.]  The Court has since denied that motion, although Tennant has appealed the denial to the district judge.  (*See* Aug. 30, 2021 Ord. [ECF No. 262]; Appeal/Objs. Mag. Judge Decision [ECF No. 341].)

deadlines pending hearing and resolution of the pending fact-discovery related motions. (*See* Sept. 17, 2021 Ct. Mins. at 1-2 [ECF No. 367].)  The parties anticipate a robust motion practice when summary judgment and *Daubert* motions are due.  Under the current scheduling order, the trial-ready date is May 16, 2022.  (Aug. 27, 2021 Ord. Am. PSO at 2 [ECF No. 251].)  However, no trial date has been set, nor would a trial date be set until after rulings on any dispositive motions.

On March 9, 2021—over a year after OWT initiated this suit—Tennant filed two petitions for IPR challenging the validity of the '415 patent.[3]  The first, IPR2021-00625 challenged the '415 patent's claims based on two prior art references, U.S. Patent No. 3,891,535 to Wikey and U.S. Patent No. 4,917,782 to Davies.  (*See* IPR Petition, Johnson Decl. Ex. 1 [ECF No. 255-1 at 1-101].)  In that petition, Tennant stipulated that it "if this IPR is instituted, Petitioner will not pursue [in the district court litigation] any ground raised in this petition or that reasonably could have been raised."[4]  (*Id.* at 85.)  The second relied on two different primary prior art references, U.S. Patent No. 6,251,259 to Satoh and U.S. Patent Pub. 2003/0042134 A1 to Tremblay.

On August 20, 2021, the PTAB instituted trial on the first petition.  (*See* IPR Decision, Johnson Decl. Ex. 2 [ECF No. 255-1 at 102-43].)  The PTAB determined that Tennant had demonstrated a reasonable likelihood of prevailing on its case for inherent

---

[3] Tennant did not file a petition challenging either of the other two patents-in-suit.
[4] The parties disagree over the scope of this stipulation, which will likely give rise to future motion practice before the Court.  (*See* Def.'s Reply at 7.)

anticipation of certain claims of the '415 patent.  (*Id.* at 25, 36.)[5]  The PTAB observed

that the litigation before this Court had been proceeding for some time but decided not to

exercise discretionary denial, emphasizing Tennant's stipulation that it would not pursue

in this Court any ground for invalidity that was or reasonably could have been raised in

the IPR petition.  (*Id.* at 15-16.)  The PTAB denied the second petition.  The final written

decision must be made within one year of the decision to commence IPR with the

possibility that the proceeding may be extended for an additional six months for good

cause.  35 U.S.C. § 316(a)(11).  The parties may appeal the IPR decision to the United

States Court of Appeals for the Federal Circuit.  35 U.S.C. §§ 141(c), 319.

On August 27, 2021, Tennant brought the instant motion for a stay of this lawsuit

pending final resolution of inter partes review of proceeding No. IPR2021-00625.  In

addition, it sought a protective order relieving the parties from case deadlines until the

motion to stay is resolved.  [ECF No. 252.][6]  The Court held a hearing on September 10,

2021.  (*See* Sept. 10, 2021 Ct. Mins [ECF No. 335].)  The Court took the motion under

advisement; in so doing, it specifically declined to grant the motion for a protective order

*instanter,* advising the parties that it intended to proceed at least with the hearing on the

previously mentioned discovery motions scheduled for September 17, 2021.  (*Id.*)

---

[5] As discussed further *infra*, the PTAB did not find Tennant presented a meaningful invalidity challenge to certain claims of the '415 patent, but instituted IPR on all challenged grounds.

[6] OWT was on notice of a potential stay since March 2021.  (*See* IPR Petition at 84 ("Petitioner intends to seek a stay after filing IPR petitions on the challenged claims in the '415 patent.").)  Tennant chose to wait to file that motion until institution of the IPR, when its case for a stay would be stronger.  *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014).

## II.   LEGAL STANDARD

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). Whether to stay litigation pending the conclusion of a reexamination or IPR by the patent office is within the district court's discretion.  *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).  When evaluating a request to stay pending such proceedings, courts consider three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.  *Honeywell Int'l, Inc. v. Furuno Elec. Co.*, No. 09-cv-3601 (MJD/AJB), 2010 WL 3023529, at *2 (D. Minn. July 30, 2010). "Attendant to the district court's inherent power to stay proceedings is the court's discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016) (concluding that the court had discretion to consider the burden of litigation on the court and the parties).  The party seeking to stay the litigation bears the burden of showing that the stay is the appropriate course of action.  *See Telebrands Corp. v. Seasonal Specialties, LLC*, No. 17-cv-4161 (WMW/HB), 2018 WL 1027452 at *2 (D. Minn. Feb. 23, 2018).  "[T]he case for a stay is stronger after post-grant review has been instituted." *VirtualAgility Inc.*, 759 F.3d at 1316.

5

## III.   DISCUSSION

### A.  Undue Prejudice or Clear Tactical Advantage

Courts may deny a request for a stay where the movant inexplicably or unjustifiably delayed seeking reexamination or IPR, or where the stay will do nothing more than delay the proceedings. *Ecolab, Inc. v. FMC Corp.*, No. 05-cv-831 (JMR/FLN), 2007 WL 1582677, at *1 (D. Minn. May 30, 2007).  Courts may also consider whether a stay would unduly prejudice the plaintiff because the alleged infringement cannot be remedied by money damages. *See Polaris Indus., Inc. v. BRP U.S. Inc.*, No. 12-cv-01405 (ADM/SER), 2012 WL 5331227, at *2 (D. Minn. Oct. 29, 2012) (noting the court may deny a stay where money damages would not sufficiently compensate a plaintiff for the alleged infringement but granting the stay in the case before it because the plaintiff failed to offer any evidence that a stay would irreparably harm its position in the marketplace).

OWT contends first that Tennant unduly delayed its pursuit of IPR, noting that it waited until just before the end of the one-year statute of limitations to file IPR petitions after being served with OWT's Complaint. *See* 35 U.S.C. § 315(b).  A stay is often denied where there is inexplicable or unjustified delay in seeking review. *See Ecolab, Inc.*, 2007 WL 1582677 at *1.

In its reply, Tennant identified two reasons for the delay.  First, Tennant blames OWT's late production of the Tremblay prior art reference in December 2020, which caused Tennant to adjust its IPR strategy by drafting the second, rejected, IPR petition

that included Tremblay as a primary reference.  (Def.'s Reply at 1-2 [ECF No. 281].)

Second, Tennant asserts it needed time to build and test emitters according to the

teachings of Wikey, Davies, and Tremblay to support Tennant's inherency arguments, an

effort that was delayed by the Covid-19 pandemic.  (*Id.* at 2-3.)

Although Tennant's first reason appears more doubtful, since Dr. Mario Tremblay

is Tennant's expert who conducted the tests for the purposes of the IPR (*see generally*

IPR Petition (referencing Dr. Tremblay's tests of the Wikey emitter)), the second is

persuasive.  The need to recreate devices from prior art references, test the devices,

analyze the results, and prepare IPR petitions would have taken time under ordinary

conditions, and undoubtedly was further delayed because of the COVID pandemic.  In

the end, the Court is not persuaded that the timing of the IPR petition arose out of a

"dilatory [or tactical] purpose."  *Middleton Inc. v. Minn. Mining & Mfg. Co.*, No. 4:03-

cv-40493, 2004 WL 1968669, at *7 (S.D. Iowa Aug. 24, 2004).

Second, OWT argues that as a non-practicing entity it would be unduly prejudiced

by a stay because the delay would allow a cloud to hang over OWT's patent portfolio

during the relatively short remaining term of the asserted patents,[7] hindering OWT's

ongoing licensing efforts.  (Pl.'s Mem. Opp. Stay at 12 [ECF No. 271].)  OWT argues a

stay under these circumstances would be particularly unfair because the IPR only

concerns one out of three patents, leaving the other two "languishing and unresolved."

---

[7] The patents-in-suit expire in February 2023.

*Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, No. 12-cv-2730 (ADM/AJB), 2013 WL 4483355, at *2 (D. Minn. Aug. 20, 2013).

Tennant counters that OWT offers only an unsubstantiated claim that it is engaged in ongoing licensing efforts, and only speculation that the "cloud" over the patents-in-suit would be less dark, or would be lifted significantly in advance of the patents' February 2023 expiration, if this litigation and the IPR were to proceed in parallel.  Tennant also contends that any demonstrable economic harm incurred during a stay could be compensated through money damages.  *See, e.g., Graphic Packaging Int'l, Inc. v. Inline Packaging, LLC*, No. 15-cv-3476 (ADM/LIB), 2016 WL 11641977, at *3 (D. Minn. Apr. 6, 2016).

OWT points to several cases in which courts have declined to stay litigation during an IPR on the ground that the patentee would be prejudiced by a stay and that money damages would not adequately address that harm.  *See Biomet Biologics, LLC v. Bio Rich Med., Inc.,* No. SAVC 10-1582 DOC (PJWx), 2011 WL 4448972 (C.D. Cal. Sept. 26, 2011); *Carl Zeiss A.G. v. Nikon Corp.*, Case No. 2:17-cv-07083-RGK-MRW, 2018 WL 5081479 (C.D. Cal. Oct. 16, 2018); *Nichia Corp. v. Mary Elle Fashions, Inc.*, Case No. 4:16-cv-1176-RWS (E.D. Mo. Mar. 10, 2017); *Smart Modular Techs., Inc., v. Netlist, Inc.*, No. 2:12-cv-02319-TLN-EFB, 2016 WL 5159524 (E.D. Cal. Sept. 21, 2016). However, in each of those cases, the patentee was in competition with the accused infringer or its suppliers or customers, or the accused infringer was about to enter the marketplace with a competing product.  *See, e.g., Biomet Biologics, LLC,* 2011 WL

4448972, at *2 ("Here, because Defendants allegedly continue to infringe upon Plaintiffs' patent in direct competition with Plaintiffs, a delay has the potential to cause severe prejudice."); Memorandum in Opposition to Motion for Stay at 20, *Nichia Corp.,* Case No. 4:16-cv-1176-RWS (ECF No. 31) (noting that plaintiff was in competition with suppliers who provided components for defendant's accused products); *Carl Zeiss,* 2018 WL 5081479, at *3–4 (defendant was about to launch a competing product).

In fact, in several of the cases relied on by OWT, the courts explicitly noted that this consideration would be different if a non-practicing entity—such as OWT is here— were involved.  *See, e.g., Carl Zeiss,* 2018 WL 5081479, at *3 ("Competition between parties can weigh in favor of finding undue prejudice.  But if the plaintiff is a non-practicing entity, this factor would weigh in favor of a stay." (internal citations omitted)); *Smart Modular Techs.,* 2016 WL 5159524, at *3 ("[U]nlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.").  Courts drawing this distinction generally cite the risk to the patentee of loss of market share and erosion of goodwill that cannot be easily quantified, a risk that is not faced by a non-practicing entity.  *See, e.g., FMC Corp. v. Summit Agro USA, LLC,* C.A. No. 14-51-LPS, 2014 WL 3703629, at *5 (D. Del. July 21, 2014).

Finally, even where direct competitors are involved, courts generally require more than a "mere conclusory assertion" that a stay pending the completion of IPR proceedings would prejudice the nonmovant and could not be remedied by money damages.  *Graphic*

*Packaging Int'l*, 2016 WL 11641977, at *3 (collecting cases and noting plaintiff had not provided "any specific evidence to support its conclusory assertion that it will suffer undue prejudice as Defendant's direct competitor should the Court grant the requested stay")

Here, OWT has not offered concrete bases to support a conclusion that a stay would subject it to harm of a nature beyond that which is inherent in any delay. "[N]ot all delay is necessarily unduly prejudicial." *Card Tech. Corp. v. DataCard Corp.*, No. 05-cv-2546 (MJD/SRN), 2007 WL 2156320, at *6 (D. Minn. July 23, 2007); *see also Smart Modular Techs.*, 2016 WL 5159524, at *3 ("[D]elay by itself does not necessarily constitute undue prejudice, as nearly every judicial stay involves delay."); *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 5:12-cv-3864-EJD, 2012 WL 6020012, at *4 (N.D. Cal. Dec. 3, 2012) (rejecting similar argument after plaintiff did not bring its infringement action until less than three years before expiration of the patents-in-suit).

OWT raised one other potential harm at the hearing, namely that there is an increased cost associated with pausing ongoing litigation efforts for an extended time and then having to get attorneys and experts "back up to speed." While this, too, is a cost inherent in any judicial delay, the Court is sympathetic to this concern. As previously discussed, the parties are in the thick of discovery and vigorous nondispositive motions practice. And, unless OWT not only prevails on its infringement claims at trial but also prevails on a claim that would entitle it to recover attorneys' fees and costs, the cost of "getting back up to speed" may not be compensable. Therefore, as will be discussed

below in connection with the stage of the litigation, the Court has taken it into account in

fashioning the parameters of the stay granted here.  With that qualification, the Court

finds this first factor weighs in favor of a stay.

### B.  Simplification of Issues

Courts have identified numerous potential benefits to staying patent litigation during

IPR or reexamination, including:

(1) all prior art presented to the Court will have been first considered by the PTO, with its particular expertise;

(2) many discovery problems related to the prior art can be alleviated by the PTO examination;

(3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed;

(4) the outcome of the reexamination may encourage a settlement without the further use of the Court;

(5) the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation;

(6) issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination;

(7) the cost will likely be reduced both for the parties and the Court.

*Intellectual Ventures II LLC v. U.S. Bancorp*, No. 13-cv-2071 (ADM/JSM), 2014 WL

5369386, at *5 (D. Minn. Aug. 7, 2014); *see Card Tech. Corp.,* 2007 WL 2156320, at *3

("[C]ommon sense counsels that it is usually prudent for a court to await the PTO's

reassessment of the patents at issue before resuming litigation over the validity,

enforceability or infringement of those patents."); *3M Innovative Prop. Co. v. Dupont*

*Dow Elastomers LLC,* No. 03-cv-3364 (MJD/AJB), 2005 WL 2216317, at *2 (D. Minn.

Sept. 8, 2005) ("Granting a stay will promote judicial economy by 'maximiz[ing] the

likelihood that neither the court nor the parties expend their assets addressing invalid

claims.'") (citation omitted).

Tennant contends the IPR will simplify the issues because the IPR concerns the '415 patent, which, if invalidated, leaves only the inexpensive sparger accused of infringing the other two recently-issued patents. (Def.'s Mem. Supp. Stay at 9.) The PTAB will rule on the prior art invalidity contentions related to the Wikey and Davies references, and will thus "simplify discovery in this litigation, clarifying the areas where the parties need to develop positions and the Court needs to focus its attention" even "if the PTO upholds the validity of some or all of the patent claims." *Carlson Pet Prods. Inc. v. North States Indus., Inc.*, No. 17-cv-2529 (PJS/KMM), 2018 WL 1152001, at *3 (D. Minn. Mar. 5, 2018). If the Court does not stay this litigation, Tennant argues, the parties will invest heavily in expert reports and dispositive motion practice relating to the '415 patent that would turn out to have been a wasted effort if the PTAB determines that patent is invalid, or would have benefited by the PTAB's analysis even if it does not invalidate the '415 patent.

OWT pointedly underscored during the hearing that the parties will not realize many of the efficiencies normally achieved through a stay pending IPR.[8] As to the first of the potential efficiencies identified in *Intellectual Ventures II,* the advantage of having the PTAB first apply its subject matter expertise to the prior art, OWT points out that Tennant has already stipulated that it will not assert in this Court any challenges based on

---

[8] OWT also argues that simplification is unlikely because Tennant's arguments in the IPR are unavailing. (Pl.'s Mem. Opp. Stay at 7-10.) Those arguments are better presented to the PTAB, not this Court, who will not speculate about the outcome of a matter the PTAB, after due consideration, chose to take up.

prior art it asserted or could have asserted in support of the petition.  (*See* IPR Petition at 85; IPR Decision at 15.)  Therefore, OWT argues, when it comes to the '415 patent, the PTAB will be applying its subject matter expertise to prior art that will *not* be asserted before this Court, while the invalidity contentions against the '415 patent that *will* be considered by this Court will not be addressed by the PTAB.  In other words, in OWT's view, any "simplification" has already occurred, and a stay would offer no additional benefit.

But OWT's argument ignores that Tennant asserts many of those same prior art references against the other patents-in-suit.  (*See* Supplemental Invalidity Contentions, Patton Decl. Supp. Mot. Amend. Invalid. Cont. Ex. B at 10, 13, 15 [ECF No. 268-1] (identifying combinations with Davies and Wikey prior art that render claims of the '092 and '665 patents obvious); *see also* Def.'s Reply at 4-5.)  Thus, while OWT is undeniably correct that *all* prior art presented to the Court will not have been first considered by the PTO, the Court is persuaded that the PTAB's analysis of the references that are at issue in the IPR may well shed light on and shape the arguments about those same references as they bear on the other two patents-in-suit.  The value to the court of that expertise is "of primary importance."  *Broad. Innovation*, 2006 WL 1897165, at *5.  Even OWT's counsel acknowledged at the hearing that if—as OWT hopes and expects—Tennant does not prevail in the IPR, the PTAB's analysis could well become relevant to the Court's consideration of those prior art references in the context of the remaining patents because it could speak to the lack of motivation to combine those references.  (*See* Sept. 10, 2021

13

Hrg. Tr. at 20:15-20 [ECF No. 403].).  And, of course, if Tennant is successful and the '415 patent is found invalid, the Court will not be required to address the remaining invalidity contentions—or any other contentions—relating to that patent at all.

As for the second benefit, Tennant did not identify any "discovery problems relating to the prior art" that would be alleviated by the IPR, particularly in view of the Court's denial of Tennant's motion to amend its invalidity contentions to add the Bait Keeper and ECOsmarte products and to conduct additional discovery about those products. (*See* Aug. 30, 2021 Ord.)  As for fact discovery generally, it acknowledged that what remains of fact discovery, if anything, would need to be completed in regard to the '092 and '665 patents even if the '415 patent is found invalid, with the only asterisk being the possibility that the PTAB result accelerated the parties' consideration of settlement and obviated the need for further litigation altogether.

Expert discovery, on the other hand, would be streamlined if a stay were granted and the '415 patent ultimately found invalid.  The parties agreed that if the '415 patent were not at issue, the scope and focus of the expert reports would change as to both liability (infringement and validity) and damages, although the same experts would be involved regardless.

Turning to the third benefit identified in *Intellectual Ventures II*, Tennant acknowledges that if it is successful in the IPR, the case as a whole would not be subject to dismissal, as the '092 and '665 patents would remain to be adjudicated along with any

claims of the '415 patent that were not at issue in the IPR.[9]  On the other hand, it would

reduce, perhaps dramatically, the number of issues to be addressed on summary judgment

and *Daubert* motions and, ultimately, at trial.  OWT emphasizes repeatedly that the IPR

concerns only ten out of thirty asserted claims in this suit and argues that this

distinguishes this case from many of the cases cited by Tennant in which a stay was

granted.  (*See, e.g.*, Pl.'s Mem. Opp. Stay at 5.)  But the Court does not find the number

of claims to be a useful proxy for the attendant time and resources or the opportunity for

simplification.   If the '415 patent is found to be invalid as a result of the IPR, an entire

line of products that are accused only of infringing the '092 and '665 patents would be

out of the case, along with the theories of infringement and damages that apply only to

those products.  If a stay were not granted and the two proceedings moved ahead in

parallel, there is the very real possibility that time and resources spent by the parties and

the Court on the '415 patent could prove to have been a wasted effort.

    The fourth benefit of a stay pending IPR is the prospect that the outcome of the

reexamination may encourage settlement.  At this stage, the weight of this benefit is

difficult to assess.  Undoubtedly, the products accused of infringing the '415 patent

account for a substantial portion—very likely the majority—of the claimed damages, and

---

[9] Tennant requested inter partes review of claims 13, 14, and 17-27 of the '415 patent.
(*See* IPR Decision at 1.)  Although the PTAB concluded that Tennant failed to raise a
meaningful invalidity challenge to claims 24, 26, and 27, the PTAB instituted IPR on all
grounds on all challenged claims per *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018).
(*See id.* at 27-28, 37-39.)  OWT vigorously argues that Tennant is unlikely to be
successful in convincing the PTAB that all claims are invalid, but it does not dispute
Tennant's argument that if it is successful, the infringement claims based on the brick
design in this suit would disappear.

therefore the result of the IPR could significantly affect both sides' views of the risk, exposure, and potential reward of proceeding with the litigation. At the same time, the parties clearly have very different assessments of the significance of the damages associated with the other two patents; those assessments will not be informed by the outcome of the IPR. Therefore, the Court is reluctant to adopt wholesale Tennant's optimism that the outcome of the IPR would necessarily put this case on the landing path to complete settlement, besides the intuitive notion (not always born out in reality) that parties will fight less over less.

In sum, although an analysis of the benefits of simplification enumerated in *Intellectual Ventures II* does not present as compelling a case for a stay here as in a case where all of the patents-in-suit were at issue in the IPR, nevertheless there are significant advantages to be gained. The IPR is likely to streamline and focus this litigation even if it does not dispose of it entirely. *See Broad. Innovation*, 2006 WL 1897165, at *6.; *cf. Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1335, 1340 (Fed. Cir. 2013) (discussing preclusive effects of IPR on on-going litigation). Therefore this factor weighs in favor of a stay.

### C. Stage of Litigation

"The third and final factor for determining the appropriateness of a stay is the stage of litigation." *Arctic Cat, Inc. v. Polaris Indus. Inc.*, No. 13-cv-3579 (JRT/FLN), 2015 WL 6757533, at *4 (D. Minn. Nov. 5, 2015). "Stays are favored when the most burdensome stages of the case – completing discovery, preparing expert reports, filing

and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice – all lie in the future." *Bio-Rad Lab. v. 10X Genomics, Inc.*, C.A. No. 18-1679-RGA, 2020 WL 2849989, at *1 (D. Del. June 2, 2020) (cleaned up).  Courts are reluctant to stay litigation where the case has proceeded through discovery or reached the "trial ready" phase. *Ecolab*, 2007 WL 1582677, at *2-3.

Tennant points to examples of cases where the court granted a stay although the cases had significantly advanced.  In *Ethicon LLC v. Intuitive Surgical, Inc.*, the parties had largely finished expert discovery when the court stayed the litigation pending IPR of six out of the seven patents-in-suit.  C.A. No. 17-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019).  As in this case, the defendant moved for a stay 18 months after the suit had been filed. *Id.*  Despite the advanced stage of the case, the court concluded that the case was at "an efficient pausing point" and that therefore the likelihood of simplification outweighed the plaintiff's concern about the sunk costs of advanced litigation. *Id.*

In *QXMédical, LLC v. Vascular Solutions, LLC*, the court granted a stay while the PTAB was considering but had not yet instituted IPR two-and-a-half years after the suit began and three months before trial.  No. 17-cv-1969 (PJS/TNL) (D. Minn. Dec. 26, 2019) (Order Granting Stay, Johnson Decl. Ex. C [ECF No. 255-1 at 195].); *see also QXMédical, LLC v. Vascular Sols., LLC*, No. 17-cv-1969 (PJS/TNL), 2020 WL 3790740 (D. Minn. July 7, 2020) (order extending stay post-institution).  In seeking the stay, the defendant had made several concessions, including an agreement to suspend sales of

allegedly infringing products and waive certain of its invalidity defenses.  (Order

Granting Stay at 2.)  After the IPR was instituted, the court extended the stay, again

emphasizing those concessions as well as the practical effects of the COVID-19

pandemic on the court's operations.  *See QXMédical,* 2020 WL 3790740, at \*2.

      To be sure, both *Ethicon v. Intuitive Surgical* and *QXMédical* can be readily

distinguished from the instant case.  In *Ethicon,* the PTAB was poised to consider six of

the seven patents in suit.  Here, it will consider only one of three.  In *QXMédical*, the

defendant made some significant concessions relating to product sales.  Tennant has not

offered such concessions here.  Moreover, since *QXMédical,* the District has made some

important advances in its readiness to try complex civil cases.[10]  The point, however, is

that the courts have not identified an arbitrary moment in the life of a case beyond which

a stay may not be granted.  *See, e.g. Middleton*, 2004 WL 1968669, at \*1, 5, 10 (granting

stay even though the case was eight years old, discovery was complete, three motions for

summary judgment were pending, and a firm trial date had been set for two months later).

Instead, the stage of the case must be weighed along with the other factors, such as the

potential prejudice to the plaintiff and the potential efficiencies to be gained through

simplification by leveraging the PTAB's expertise.

---

[10] The District has developed and continued to refine its protocols for both virtual and in-person civil jury trials.  *See In re: Updated Guidance to Court Operations Under the Exigent Circumstances Created by Covid-19*, Gen. Ord. 30 at 3 (D. Minn. Sept. 3, 2021), https://www.mnd.uscourts.gov/sites/mnd/files/2021-0903_COVID-19-General-Order-No30.pdf.

This case is neither incipient nor on the brink of trial. As the Court has previously described, fact discovery is nearly complete and a *Markman* order has been issued. The current scheduling order calls for the case to be trial-ready by May 2022, four months before the presumptive one-year deadline for a decision in the IPR. However, while expert preparation is no doubt underway, expert disclosures are on hold while the Court resolves several pending motions that could further extend fact discovery, and dispositive motion practice will not begin for several months. Furthermore, as Tennant correctly observes, the "trial-ready" date is not a firm trial date but is only the earliest date by which the case could potentially be set for trial. Between here and a firm trial date lie not only the extensive dispositive motions that will filed in this case but also the challenges of scheduling lengthy civil trials (notwithstanding the protocols that have been developed) when there is a backlog of criminal trials that must take priority, older civil cases that are backed up for trial behind those, and a health and safety environment that is far from predictable. As a result, it is simply not realistic to assume that in the absence of a stay this case would be set for trial on or even close to the "trial-ready" date.

The Court has already determined that a stay would not unduly prejudice OWT, and that there are advantages of simplification to be gained. That said, this case is not neatly at "an efficient pausing point," like in *Ethicon*. As already noted, the fact discovery that remains to be completed (and the motions pertaining to fact discovery that remain to be resolved by the Court) will almost certainly need to be completed regardless of the outcome of the IPR. Other than the speculation that the case could be settled in the

interim, Tennant has identified no savings that could be achieved by waiting to finish fact discovery until after the IPR is complete.  On the contrary, not unlike a plant shutdown, there would be increased costs associated with turning it off now only to fire it up again a year or so later.

However, expert discovery is a different matter.  If expert discovery is stayed, nothing prevents each side from making its own choice about whether to take advantage of any perceived momentum and press ahead with its experts, drafting the reports but deferring the disclosures until after the IPR, or to pause the experts' work until the outcome of the IPR and the attendant analysis from the PTAB can be taken into consideration.  Similarly, attorney work product toward dispositive motions can be memorialized and then put on ice until a stay is lifted.

In the end, "the denial of a stay can have no effect whatsoever on past events, [and] the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.  Second, although there has been a great deal of activity in this litigation to date, much remains to be decided before the case is ready for trial." *Softview Comput. Prods. Corp. v. Haworth, Inc.*, No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y Aug. 10, 2000).  On the whole, the Court finds that the ends of justice are best served if the parties complete any remaining fact discovery as expeditiously as possible but for the remainder of this litigation to be stayed pending the outcome of the IPR.

## IV.   Conclusion

Therefore, based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendant Tennant Company's Motion to Stay and for a Protective Order [ECF No. 252] is **GRANTED IN PART AND DENIED IN PART** as follows:

1.  All expert discovery, dispositive motion practice, and trial-related proceedings in this case are immediately **STAYED** pending the IPR of the '415 patent at the PTAB.

2.  Fact discovery and related motions, to the extent not otherwise barred by the current scheduling order, are **NOT STAYED** but shall be concluded consistent with the results of any pending motions.

3.  To the extent not already denied, the Court **DENIES AS MOOT** the motion for a protective order "relieving the parties from Case Deadlines until the motion to stay is resolved."

4.  Within 10 days after the PTAB issues its final written decision on the IPR, the parties shall submit a joint report outlining the outcome of the IPR with regard to the asserted claims, and the parties' joint proposal for a schedule governing all matters bearing on discovery, motions, settlement, and trial (or separate schedules and proposals if they cannot agree), including whether either or both parties seek an extension of the stay pending the outcome of any appeals of the PTAB's decision.

Dated: October 7, 2021

_s/ Hildy Bowbeer_
HILDY BOWBEER
United States Magistrate Judge