UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Oxygenator Water Technologies, Inc., | No. 20-cv-00358 (KMM/DJF) |
| Plaintiff, | |
| v. | ORDER |
| Tennant Company, | |
| Defendant. | |

This is a patent infringement case brought by Plaintiff Oxygenator Water Technologies, Inc. ("OWT") against Defendant Tennant Company ("Tennant"). Before the Court are the parties' pre-trial motions in limine. The Court held a final pretrial conference in this matter on October 31, 2024. The Court issued bench rulings on a number of these motions, while taking others under advisement. This Order is intended to memorialize the Court's previously articulated decisions and provide a ruling on the outstanding motions.

I.   **OWT's Motions in Limine**

   **A.  Motion in Limine No. 1 (ECF 726)**

In Motion in Limine No. 1, OWT asks the Court to preclude Tennant from "offering any evidence, testimony, or argument concerning offers to license made by OWT to any party other than Tennant." ECF 727 (Pl.'s Mem. in Supp. of Mot.) at 5. The Court ruled on this motion in large part from the bench, leaving one question unanswered.

During the hearing, the Court denied this motion, concluding that evidence about OWT's past offers to license its patents was relevant to the questions of damages that will

1

be determined by the jury in this case. The Court first observed that OWT's past license efforts pre-dated this litigation and the offers, made be OWT, were genuine though not ultimately successful. These facts distinguished this case from many of those cited by OWT, in which self-serving license offers that artificially distorted the damages horizon were deemed inadmissible at trial. *See, e.g.*, Whitserve, LLC v. Computer Packages, Inc., 694 F.3d 10, 29–30 (Fed. Cir. 2012) ("[P]roposed licenses may have some value for determining a reasonable royalty in certain situations. Their evidentiary value is limited, however, by, inter alia, the fact that *patentees* could artificially inflate the royalty rate by making outrageous offers.") (emphasis added). The Court further explained that the differences between the past license offers and the hypothetical license negotiation between OWT and Tennant that the jury must consider would perhaps impact the weight the jury would give to those licenses, but did not preclude their admissibility. *See, e.g., Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020) (concluding that in many cases, "degree of comparability is a factual issue best addressed through cross examination."). OWT is free to explore any differences between past licensing efforts and the appropriate damages in this case through cross-examination.

Relatedly, the Court and counsel discussed Tennant's intention to elicit testimony that OWT offered the licenses to its competitors and specifically mentioned during the negotiations that taking such licenses would enable those competitors to sue Tennant for infringement. *See* ECF 807 (Def's Opp. to Pl's Mot.). In part, Tennant seeks to argue that their rejection of the invitation to sue was indicative of Tennant's non-willful infringement because those competitors did not see Tennant's products as infringing. The Court,

2

invoking Federal Rule of Evidence 403, held that Tennant may not make such an argument or elicit such evidence because there are many reasons a competitor might chose not to pursue a patent lawsuit against Tennant (including cost, goodwill, lack of litigiousness) that have nothing to do with a substantive assessment of the merits of the infringement case they could bring. Therefore, the minimal probative value of such testimony was heavily outweighed by the certainty of waste of time and confusion of the issues before the jury.

However, at the hearing the Court reserved its opinion on whether Tennant may seek to elicit any testimony at all that OWT's license offers included a suggestion that the competitors could use the licenses to sue Tennant. The Court now concludes that Tennant may not do so. Such testimony is of limited probative value to the questions to be decided by the jury. Although Tennant suggested that OWT's conduct in this respect is relevant to the jury's consideration of its own willfulness, the Court disagrees: Tennant's conduct with these earlier license offers does not play into any of the factors the Court will instruct the jury to consider in assessing willfulness. And even if it offered some minimal relevance, that value is well outweighed by the risk of unfair prejudice to OWT through an implication that they are improperly litigious. The Court further observes that this tangential testimony could present hearsay problems and invite undue speculation into the mindset of non-parties and decisionmakers who will not be present in the courtroom, while spending precious trial time unnecessarily.

In sum, OWT's Motion in Limine No. 1 is granted in part and denied in part. Though Tennant may offer testimony about OWT's past licensing efforts, it may not introduce evidence of the suggestion that such a license would enable a future patent lawsuit.

**B. Motion in Limine No. 2 (ECF 729)**

In Motion in Limine No. 2, OWT asks the Court to preclude Tennant from offering evidence or argument that Tennant had an available non-infringing alternative to the technology claimed by the Asserted Patents in this case. ECF 730 (Pl.'s Mem. in Supp. of Mot.) at 5. At the hearing, the Court heard argument and took the motion under advisement. This motion is now denied.

OWT's request that this Court conclude, as a matter of law, that there was no non-infringing alternative available to Tennant at the time of the hypothetical negotiation asks too much. Critically, the cases cited by OWT in support of this motion do not stand for the proposition of the inadmissibility of evidence related to an imperfect or under-developed non-infringing alternative. Rather, taken together these cases suggest that whether an asserted non-infringing alternative was actually available is generally an appropriate factual consideration that may affect an ultimate award of damages. *See*, *e.g.*, *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008) (affirming the reasonable royalty reached by a district court after a bench trial, in which the judge, sitting as fact finder, determined that the infringer lacked a non-infringing alternative and declined to adopt a royalty based on the existence of one). OWT argues that the flaws with Tennant's proposed alternatives—namely removing the sparger from some of their larger cleaners—render evidence about that alternative inadmissible, but instead they are appropriate considerations for the jury. Tennant will be free to elicit testimony that it believed a sparger-free version of the ec-H2O module was available at the time of the hypothetical negotiation and OWT will be free to explore the veracity of such an assertion on cross,

4

including by reference to subsequent efforts by Tennant that were not ultimately successful or implemented. Nothing about this evidence requires exclusion, and OWT points to no authority for its suggestion that evidence concerning an imperfect non-infringing alternative is inadmissible as a matter of law. OWT's Motion in Limine No. 2 is denied in full.

### C. Motion in Limine No. 3 (ECF 733)

In Motion in Limine No. 3, OWT asks the Court to preclude "evidence, testimony, or argument related to prior art beyond the general discussion of the state of the art of electrolysis contained in ¶¶ 93-97 of Dr. Hansen's rebuttal report." ECF 734 (Pl.'s Mem. in Supp. of Mot.) at 4. The Court in large part granted this motion during the hearing, while explaining that Tennent will be free to introduce evidence regarding the overall state of the art of electrolysis, including testimony about the well-established nature of this technology, and will not be wholly limited to the statements made in the above-referenced paragraphs of Dr. Hansen's expert report. However, as further discussed during the hearing, Tennant will not be allowed to introduce evidence regarding any specific patents in the art. Testimony about specific patents that Tennant believes are similar to those asserted in this case by OWT would be of very limited relevance to the decisions before the jury. Such testimony would also be improperly and prejudicially suggestive of validity disputes that are not before the jury. Inquiry about other specific patents also risks wasting time on a collateral issue, to the extent that such testimony opens the door to an evidentiary battle over the similarity or dissimilarity of any existing patent to those asserted by OWT in this case. OWT's Motion in Limine No. 3 is largely granted.

5

**D. Motion in Limine No. 4 (ECF 736)**

In Motion in Limine No. 4, OWT asks the Court to preclude Tennant from offering evidence or argument that Tennant also owns patents that its ec-H2O products practice. ECF 737 (Pl.'s Mem. in Supp. of Mot.) at 4. The Court heard argument and took this under advisement. This motion is now granted as follows: Tennant will be free to elicit testimony that it owns patents and that it engages in its own research and development that it utilizes in its own products, including the ec-H2O. Tennant may also introduce evidence that its ec-H2O products contain substantial technology other than that claimed by the patents in this case. And Tennant will be free to cross-examine OWT's damages expert regarding his apportionment of little value to the non-infringing technology in the ec-H2O products. However, Tennant may not introduce evidence or seek testimony that its products practice any specific Tennant-owned patent, nor may it inquire of Dr. Nantell as to why he failed to apportion specific value to any patent or patents that the ec-H2O products purportedly practice. Such evidence is not only of minimal relevance, if any, but it risks significant waste of time and confusion of the issues before the jury, under FRE 403.

In reaching this conclusion, the Court first agrees with OWT that there is a threshold factual dispute about whether Tennant's products in fact practice any patent owned by Tennant. Resolving that dispute will require time and attention by both parties that is significantly out of proportion to the dispute's arguable but at most slim relevance to this case. But even if the ec-H2O products do practice one or more patents owned by Tennant, this is irrelevant to, and in fact should not bear on, the infringement issues the jury will need to decide. Likewise, Tennant has not adequately explained why the ec-H2O's practice

of any specific patent beyond those asserted in this case by OWT would affect the jury's calculation of damages, aside from the reality that the scrubbers at issue contain and rely on other important technology. Whether that technology also practices any Tennant patent adds very little to the apportionment discussion. Finally, to the extent it has any bearing on the jury's determination of willfulness, Tennant remains free to rebut any suggestion of being a "bad actor" by eliciting general testimony about the company's investment in its own research and development, as well as its own intellectual property. Additional testimony about specific patents that Tennant believes its products practice will not meaningfully further this narrative. For all these reasons, the Court concludes that testimony concerning the purported practice of specific Tennant patents by the ec-H2O products is of limited relevance to the jury, and that any such relevance is outweighed by the risk of confusing the jury and wasting time.

### E. Motion in Limine No. 5 (ECF 740)

In Motion in Limine No. 5, OWT asks the Court to preclude Tennant from offering evidence or argument that Tennant relied upon advice of counsel that its products did not infringe the asserted patents. ECF 741 (Pl.'s Mem. in Supp. of Mot.) at 4. The motion is based on the assertion that Tennant did not waive attorney-client privilege during this litigation and therefore should not be allowed to offer testimony at trial concerning the reasons that Tennant's counsel may have offered internally to support Tennant's belief that it was not infringing OWT's patents. The Court heard argument on this motion during the hearing, during which Tennant clarified that it did not plan to elicit testimony from its in-house counsel witness as to any analysis or discussion that underpinned Tennant's

declination of a license offer from OWT. Rather, Tennant represented that its intent was merely to have in-house counsel testify that Tennant declined OWT's license offer because it did not believe it was infringing OWT's patents. Based on that clarification, the Court granted OWT's motion as uncontested, with the understanding that OWT may renew the motion during trial should live testimony warrant revisitation of this ruling.

## II. Tennant's Motions in Limine

### A. Motion in Limine No. 1 (ECF 768)

In Motion in Limine No. 1, Tennant asks the Court to "preclude any evidence, testimony, or argument regarding Tennant's overall revenue generated from its ec-H2O and NanoClean line of business." ECF 769 (Def.'s Mem. in Supp. of Mot.) at 2. During the hearing, OWT clarified that it did not intend to attempt to introduce such evidence. As such, the Court granted this motion as unopposed.

### B. Motion in Limine No. 2 (ECF 774)

In Motion in Limine No. 2, Tennant asks the Court to "preclude any evidence testimony, or argument that damages can be evaluated based on the entire market value of the accused multicomponent floor scrubbers." ECF 775 (Def.'s Mem. in Supp. of Mot.) at 2. Specifically, Tennant seeks to limit the extent to which OWT could offer evidence that past royalty rates were instructive, and that a reasonable royalty rate in this case could be based on a similar percentage of the full sales price of the floor scrubbers at issue. The Court heard argument on this motion and received clarification from both sides about what sort of evidence each might seek to introduce, and then took the matter under advisement. The Court now denies this motion.

This decision largely parallels the Court's denial of OWT's Motion in Limine No. 1. OWT's damages expert, Dr. Nantell, has submitted an opinion in this case in which he explained that his proposed royalty figure is in line, in percentage terms, with the effective royalty rates of OWT's previous licenses, and he reached that conclusion by reference to the full sales price of the floor scrubbers at issue. *See, e.g.*, ECF 779 (Dr. Nantell Op. Expert Rep.) ¶ 115 (opining that "the $543 [per unit] royalty discussed in this section is equivalent to 1.6 percent of the 2014 average sales price of floor scrubbers that included the sparger. This is quite low within the range of the royalties reflected in the licenses in the record in this case."). In response, Tennant argues that the royalty rate expressed in OWT's previous licenses, which Tennant characterizes as "cover[ing] simple, single function products" in contrast to "Tennant's multi-component floor cleaner" (ECF 775 at 2), cannot buttress Dr. Nantell's opinion about the appropriate royalty between OWT and Tennant. But if Tennant believes that the previous royalty rates and the means of calculating them should be distinguished by the jury on grounds that the products they covered were dissimilar, then this can be established under cross-examination.[1] This is consistent with the Court's approach to the use of evidence concerning OWT's past offers to license.

---

[1] Notably, as OWT points out, Dr. Nantell actually opines that OWT's previous licenses are not, in fact, comparable to the hypothetical negotiation between OWT and Tennant, and his reference to the royalty rates in the previous and that these licenses should *not* be considered in the first place. See ECF 797 (Pl.'s Opp. to Mot.) at 6 (citing Dr. Nantell Op. Rep. ¶ 103). Dr. Nantell's use of percentages is offered in an attempt to buttress his royalty opinion with a secondary data point, only "to the extent the parties did consider these licenses." *Id*.

9

More broadly, Tennant's motion in many respects simply takes issue with the dollar figure that Dr. Nantell reached in his royalty opinion. Indeed, Tennant argues that it is erroneous, as a matter of law, for Dr. Nantell to base his royalty figure on the revenue Tennant derives from its floor scrubber machines as a whole, rather than on some percentage of value of the ec-H2O module contained within those machines. *See*, *e.g.*, ECF 775 at 4 ("Under the [entire market value rule], a royalty based on a percentage of revenue (such as from a comparable license) cannot be applied to the total value of a multicomponent product unless the patentee proves that the entire value of the product comes from the patented feature.") (emphasis omitted) (citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012)). Here, it is undoubtedly true that Dr. Nantell has attributed significant value to the infringing and allegedly infringing aspects of Tennant's floor scrubbers, as a whole. Whether his ultimate dollar-value opinion, rather than his calculations for getting there, violates the entire market value rule is beyond the scope of this motion in limine. Furthermore, the Court notes that Tennant's own case law shows that such a determination should be reached by the jury based on the evidence presented at trial. *See LaserDynamics,* 694 F.3d at 68 (explaining that "[plaintiff's] use of the entire market value rule was impermissible, however, because [plaintiff] *failed to present evidence* showing that the patented disc discrimination method drove demand for the laptop computers") (emphasis added). In sum, this topic is appropriate for vigorous battles of the experts and cross-examination, but not for exclusion. Tennant's Motion in Limine No. 2 is denied.

C. **Motion in Limine No. 3 (ECF 782)**

In Motion in Limine No. 3, Tennant moves the Court for an order precluding OWT from offering evidence or testimony that "it has already been determined" that Tennant's floor scrubbers infringe certain asserted claims. *See* ECF 783 (Def.'s Mem. in Supp. of Mot.) at 2. This motion parallels repeated disputes in the joint proposed jury instructions submitted by the parties, which is discussed below. As the Court explained at the hearing, the motion is denied.

III. **Jury Instructions and Verdict Form**

A. **Jury Instructions**

The parties worked together to propose a single set of jury instructions, with areas of disagreement highlighted for eventual resolution. ECF 722. In large part, both sides agree about most things and the Court commends and appreciates the cooperation. However, there were three broad disagreements that permeated the instructions. The Court gave guidance about how it would resolve those issues and circulated proposed language for the parties to consider. Counsel then agreed to continue their meeting and conferring, and plan to bring back a revised set of instructions ahead of trial. The three disagreements will be summarized here.

First, the parties disagreed about whether the jury should be told that it had already been determined that Tennant *infringed* OWT's patents, as OWT requested, or that Tennant products *practice certain claims of* Tennant's patents, as Tennant proposed. The Court determined that the instructions could use the term "infringed." The Court noted that it is accurate, and can hardly be seen as prejudicial when the jury was going to be asked to find

11

damages and whether such infringement was willful. More critically, the Court found that the language proposed by Tennant would be unduly confusing: counsel and the expert witnesses would be talking at length about how to value the infringement, and then the Court would use completely different language to describe their task.

Second, the parties disagreed about how the previous determinations should be described, with OWT seeking to instruct them that the Court had already decided on the infringement. Tennant wanted an instruction that describes that "certain of its products meet the limitations of certain claims and it is not disputing infringement for those claims." The Court adopted a path in the middle, where the jury would be told clearly that infringement had been determined, but the instructions would not focus on the Court's role in that determination.

The Court found that not only did this framing minimize the concerns raised by Tennant, but it most accurately described the procedural history of this case. Following claim construction, Tennant stipulated that ec-H2O products practiced all limitations of certain claims of the asserted patents in this case. *See* ECF 603. OWT then moved for summary judgment of infringement, based on there being no dispute that Tennant makes, uses, or sells the ec-H2O products in the United States. *See* ECF 606 at 28–29. This motion was unopposed, though Tennant reserved its right to appeal the claim construction and to continue to challenge the validity of the patents. Therefore, with the agreement of both sides, the Court entered summary judgment. *See* ECF 693 at 38–39. Against this backdrop, the Court concludes it is most accurate to simply state that this aspect of infringement "has already been determined" rather than saying either that Tennant had agreed (which elided

the influence of the claim construction), or that the Court had decided (which implied that Tennant had contested infringement and lost). Not only will the jury be informed using this language in jury instructions that certain aspects of infringement "have already been determined," but the parties must also use substantially similar language during trial. To the extent that this ruling requires further clarification during trial, Tennant may raise an objection.

The final area of disagreement between the parties involves how the instructions will describe damages. OWT wants to describe the jury's duties in determining damages using the word itself, and following the pattern instructions from the Federal Circuit; Tennant wants the jury's task to be specifically described as calculating a "per unit-royalty rate," while eschewing the use of the word "damages." *See, e.g.*, ECF 722 at 62. The model instructions generally refer to damages, rather than substituting the theory of damages calculation into the jury instructions, and the Court will follow suit. Not only was Tennant's proposal a deviation from the model, but it became somewhat clunky and confusing in practice. And since once again the experts and counsel would be referring to damages through the trial, using only the "per-unit royalty rate" language in the instructions themselves could lead to a confusing disconnect. Finally, Tennant pointed to no authority that such a framing was common, let alone required.

### B. Verdict Form

The final area of disagreement addressed at the pretrial conference involved the parties' competing versions of the proposed verdict form regarding whether they jury is asked to fill in a single number for damages or is required to "show their math," specifying

the reasonable royalty rate and then multiplying by the number of units. ECF 719 (Pl.'s Prop. Special Verdict Form); ECF 765 (Def.'s Prop. Special Verdict Form). The Court will wait until near the conclusion of evidence to determine which proposal to adopt.

**IT IS SO ORDERED**.

Date: November 10, 2024

                                                        *s/Katherine Menendez*
                                                        Katherine Menendez
                                                        United States District Judge